**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CROSSFIT, INC.,** | |
| **Plaintiff,** | Case No. |
| **vs.** | |
| **NATIONAL STRENGTH AND CONDITIONING ASSOCIATION,** | |
| **Defendant.** | |

**NON-PARTY THE OHIO STATE UNIVERSITY'S COMBINED
MOTION AND MEMORANDUM IN SUPPORT
TO QUASH SUBPOENAS AND FOR A PROTECTIVE ORDER**

This Motion to Quash Subpoenas and for a Protective Order seeks to protect non-party The Ohio State University ("OSU") from excessive, repetitive, and harassing subpoenas from CrossFit, Inc. ("CrossFit"), arising out of CrossFit's litigation with the National Strength and Conditioning Association ("NSCA"). Since 2014, CrossFit and NSCA have been litigating in California federal and state courts[1] regarding an article authored by Steven Devor and others that was published by the Journal of Strength and Conditioning Research ("JSCR"), entitled "Crossfit-based high intensity power training improves maximal aerobic fitness and body composition" ("the Devor article"). CrossFit has turned its dispute against NSCA into an all-out discovery war. In addition to extensive and costly discovery disputes between CrossFit and

---

[1] There are two cases between CrossFit and NSCA. The "Federal Case" refers to *CrossFit, Inc., v. National Strength and Conditioning Association*, a case pending in the U.S. District Court for the Southern District of California, Case No. 3:14-cv-1191. The "State Case" refers to *National Strength and Conditioning Association v. CrossFit, Inc.*, a case in San Diego County Superior Court, Case No. 37-2016-00014339, domesticated in Franklin County Court of Common Pleas, Case No. 17 MS 05 00315.

NSCA, numerous subpoenas have been issued to third parties. To date, OSU has been served with seven subpoenas in the two California CrossFit/NSCA cases. CrossFit's forensic examiner, Stroz Friedberg, has racked up millions of dollars in fees in support of CrossFit's discovery on discovery against NSCA. CrossFit has now turned its sights on non-party OSU, arguing that it is entitled to forensically image OSU servers without regard to privacy protections because OSU did not preserve one email it had no obligation to preserve.

Before this Court are CrossFit's sixth and seventh subpoenas to OSU. They command OSU to submit to further intrusive and protracted discovery in violation of federal law, including the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g, and to permit discovery on discovery for no valid purpose. CrossFit's October 1, 2018, Rule 30(b)(6) testimony subpoena ("the October 2018 Testimony Subpoena" (attached as Exhibit A)), seeks extensive testimony from OSU regarding document retention policies, data management, and prior document collection and production efforts. The November 14, 2018, records subpoena ("the November 2018 Records Subpoena" (attached as Exhibit B)) demands that OSU provide CrossFit's forensic examiner with direct access to OSU computer systems to image all OSU electronic resources ever used by OSU Professor William Kraemer and his assistant, Joan Kraemer—something that would require OSU to violate FERPA and jeopardize its federal funding.

Because CrossFit has failed to avoid imposing undue burden and expense on OSU as required by Fed. R. Civ. P. 45(D)(1), OSU moves this Court for an Order quashing these subpoenas under Rule 45(D)(3) and for a Protective Order under Rule 26(c) that forbids the 30(b)(6) deposition. In support thereof, OSU states:

1.      CrossFit already issued, and OSU already responded to, five subpoenas from CrossFit in the California cases. Every time OSU responds to a subpoena, CrossFit responds with another, broader subpoena requesting new, different, and larger sets of information. CrossFit's repeated and increasingly demanding subpoenas and CrossFit's counsel's unnecessarily burdensome and harassing meet and confer process has imposed and will continue to impose undue burden and expense on non-party OSU.

2.      CrossFit now accuses OSU, a non-party, of violating non-existent general preservations duties in the California litigation. CrossFit also attempts to apply a sanctions order *imposed against NSCA* on *OSU*, a non-party to whom the order does not apply. In doing so, CrossFit wrongly seeks discovery on discovery of a non-party, creating further undue burden and expense.

3.      Most importantly, OSU notified CrossFit numerous times that any production from OSU must satisfy FERPA, which requires either written consent or advance notice to affected students and/or their parents *before* OSU can disclose information about students to a third party, even if the disclosure is made pursuant to a subpoena or court order. CrossFit refused to limit the scope of its current document requests to avoid needlessly capturing irrelevant student records, or to allow OSU to control the review so it is conducted in a manner that both complies with FERPA and avoids undue burden and expense to OSU. Approximately 29 percent of OSU's operating revenue for the 2017-2018 academic year came from federal funding. Failure to comply with FERPA can lead to a loss of federal funding. CrossFit's demand that entire computer systems and servers be turned over without prior OSU review would violate FERPA and jeopardize OSU's federal funding.

3

4.     In addition, CrossFit already subpoenaed OSU for a 30(b)(6) deposition four years ago, and in March 2015, OSU produced a corporate designee for deposition. CrossFit's attempt to obtain a second 30(b)(6) deposition without leave of court violates Rule 30(a)(2)(A)(ii).

5.     Undersigned counsel for OSU certifies that OSU has in good faith met and conferred with CrossFit in an effort to resolve this discovery dispute without court action. As described in the Declaration of Matthew I. Kaplan (attached as Exhibit C), OSU provided timely written objection to the November 2018 Records Subpoena pursuant to Rule 45(d)(2)(B) and met and conferred with counsel for CrossFit via telephone and email multiple times prior to filing this Motion, as required by Rule 26(c)(1). In addition, the Ohio Attorney General's Office ("OAG"), through Assistant Attorney General Reid Caryer, met and conferred extensively on OSU's behalf with counsel for CrossFit, as described in the Declaration of Reid T. Caryer (attached as Exhibit D).

6.     The grounds for this Motion are set forth more fully in the incorporated Memorandum in Support.

012434\000012\4009905.7

Dated: December 14, 2018          Respectfully submitted,

*/s/Scott J. Stitt*
Scott J. Stitt (0073943)
TUCKER ELLIS LLP
175 S. Third St., Suite 520
Columbus, OH 43215
Tel: 614.358.9304
Fax: 614.358.9712
E-mail: scott.stitt@tuckerellis.com

*Trial Attorney for Non-Party*
*The Ohio State University*

Jeffrey C. Sindelar Jr. (0084252)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Tel: 216.592.5000
Fax: 216.592.5009
E-mail: jeffrey.sindelar@tuckerellis.com

*Attorneys for Non-Party*
*The Ohio State University*

5

## MEMORANDUM IN SUPPORT OF MOTION
## TO QUASH SUBPOENAS AND FOR A PROTECTIVE ORDER

This Motion to Quash and for a Protective Order finds its way to this Court after over four years and seven subpoenas to non-party OSU stemming from extensive litigation and collateral discovery on discovery between CrossFit and NSCA in California state and federal courts. In the Federal Case alone, CrossFit's forensic examiner, Stroz, has charged millions of dollars in fees. (Order Denying Motion to Appoint Special Master and Setting Scheduling Order ("Scheduling Order") 6:21, 7:2-3, 13:14-20 (attached as Ex. 2 to November 2018 Records Subpoena) (noting that Stroz required only an initial $10,000 retainer, provided "no 'budgets, projects, or timelines,'" and had "billed $938,672.72 prior to July 18, 2018," when it issued invoices for April, May, and June 2018 totaling $1,381,251.11").) Similar exorbitant collateral discovery costs in the State Case recently caused NSCA to move to dismiss its action. *See* Docket, *National Strength and Conditioning Association v. CrossFit*, San Diego Sup. Ct., No. 37-2016-14339; *see also* Ryan Boysen, *CrossFit Rival Drops Defamation Suit, Citing Discovery Costs*, Law360 (Nov. 29, 2018) (attached as Ex. G to Kaplan Decl.) (explaining that NSCA dropped its State Case strictly as a "business decision" due to "unusual and extraordinary" forensic discovery expenses reaching seven figures).

CrossFit is now seeking to impose similar exorbitant discovery burdens on non-party OSU. By demanding Stroz be given direct access to OSU's computer systems to image drives in violation of Federal law, routinely threatening motions to compel, and issuing preservation demands to OSU and its counsel (including the Ohio Attorney General's Office), CrossFit's counsel has made clear that it will bully anyone who attempts to limit its costly discovery warfare.

1

OSU comes to this Court after years of responding to CrossFit discovery demands and months of trying negotiate with CrossFit regarding its latest demands to no avail. Only intervention by this Court will put an end to CrossFit's unrelenting and abusive discovery on nonparty OSU.

## I.      FACTUAL BACKGROUND

### A.  CrossFit's First and Second Subpoenas to OSU—September 2014.

CrossFit issued its first two subpoenas to OSU in September 2014. The first subpoena (the "September 2014 Records Subpoena," attached as Exhibit A to Declaration of Daniel Forsythe (attached as Exhibit E)) requested all documents in OSU's possession from January 1, 2008, to the present that related to ten categories of documents that included (among other things) the Devor Study and the Devor Article, CrossFit, agreements between OSU and the NSCA, OSU's employment of Steven Devor, and OSU's document destruction, retention, and alteration policies, including how those policies related to electronically-stored documents and email. (Attachment to 2014 Records Subpoena at 3-5.)

OSU, represented by the Ohio Attorney General's Office ("OAG"), met and conferred with CrossFit before producing documents on October 6, 2014, while maintaining objections that the subpoena was overly broad, vague, confusing, not relevant, not reasonably calculated to lead to the discovery of admissible evidence, and improperly sought information protected by the attorney-client privilege and work product doctrine. (Forsythe Decl. ¶¶ 7-8; Letter from Daniel R. Forsythe to Paul Serritella (Oct. 6, 2014.), Forsythe Decl. Ex. D at 1). OSU made supplemental productions on January 15, March 5, and March 12, 2015. (Forsythe Decl. ¶¶ 9-11; Forsythe Letters dated Jan. 15, March 5, and March 12, 2015, Forsythe Decl. Ex. D at 2-4.).)

The second subpoena (the "September 2014 Testimony Subpoena" (attached as Ex. B to Forsythe Decl.).) sought deposition testimony regarding (among other things) the allegations in CrossFit's Complaint in the Federal Case, OSU's involvement in the Devor Study, agreements between OSU and the NSCA, and OSU's document destruction, retention, and alteration policies, including how those policies related to electronically-stored documents and email. (Attachment to 2014 Testimony Subpoena at 2-4.) On March 13, 2015, OSU sat for deposition, producing Dr. Steven Devor for testimony in response to the September 2014 Testimony Subpoena. (Forsythe Decl. ¶ 12.)

## B. CrossFit's Third Subpoena to OSU—September 2015

In September 2015, CrossFit issued a third subpoena to OSU, seeking both records and testimony (Forsythe Decl. ¶ 13; the "September 2015 Records and Testimony Subpoena," Ex. C to Forsythe Decl.). The testimony sought was largely duplicative of the March 2015 deposition of OSU but included some new and overlapping categories of testimony.[2] CrossFit also requested eleven categories of documents, again largely duplicative of the 2014 Records subpoena with new and overlapping categories from a broader time range. (Exhibit B to September 2015 Records and Testimony Subpoena at 5-6.)

---

[2] The new and overlapping categories of testimony included: (4) knowledge regarding an Institutional Review Board process regarding the Devor Article and/or Devor Study; (8) an article entitled "NSCA 'CrossFit Study' Fraud" by Russell Berger for CrossFit's website in May 2013 and a transcribed phone call from April 2013 between Russell Berger and Steven Devor; (9) a CHAMP/ACSM Conference and Paper and communications related thereto, (10) an Erratum related to the Devor Article; and (11-15) communications with participants in the Devor Study, the NSCA, Dr. Kraemer, the Devor Authors, or any editors, reviewers, or other individual who reviewed the Devor Article prior to publication concerning the Devor Article, the Devor Study, CrossFit, high-intensity training programs, the CHAMP/ACSM Paper, and/or the CHAMP/ACSM Conference. (Exhibit A to September 2015 Records and Testimony Subpoena at 3-5 (List numbers correspond to the numbered areas of examination from the testimony portion of the 2015 Records and Testimony Subpoena).)

3

For the next two months, OSU worked extensively in good faith and expending considerable resources to reach a resolution with CrossFit, including exchanging multiple drafts of declarations to be signed by OSU personnel in an effort to provide CrossFit the testimony it was seeking without OSU submitting to a second 30(b)(6) deposition. (Forsythe Decl. ¶ 15 & Ex. D at 5-54.) As part of those discussions, CrossFit's counsel accused OSU of failing to produce all responsive documents in response to the September 2014 subpoena, pointing to emails created *after* September 2014 as alleged proof. (Forsythe Decl. Ex. D at 48-54.) On December 18, 2015, OSU's counsel sent CrossFit's counsel a letter stating that it appeared the parties had come to a stalemate on the deposition/declarations and producing to CrossFit the five emails CrossFit already had in its possession in order to put to rest CrossFit's claims that OSU had not produced them. (Forsythe Decl. ¶ 15 & Ex. E.) After sending this letter, OSU did not receive any further correspondence from CrossFit regarding testimony in response to the September 2015 Records and Testimony Subpoena. (Forsythe Decl. ¶ 15.)

### C. CrossFit's Fourth Subpoena to OSU—May 2017

On May 4, 2017, CrossFit issued a fourth subpoena to OSU, seeking further records and testimony (the "2017 Records and Testimony Subpoena" (Caryer Decl. ¶ 6 & Ex. 1)) from OSU by May 24, 2017. This subpoena sought 19 categories of documents that were largely duplicative of CrossFit's three prior subpoenas to OSU, while adding new and overlapping categories.[3] CrossFit also sought yet another redundant corporate witness deposition.

---

3 The new and overlapping categories included documents related to: (1)(a) media inquiries and responses; (7) disciplinary measures considered, proposed, or imposed; (8) whether equipment used during the Devor Study was funded through federal grant money; (10) agreements related to Dr. William Kraemer and CrossFit; (11) OSU's settlement of a Court of Claims lawsuit brought by the owner of the gym where the Devor Study was conducted; (18) Coca-Cola and NSCA; and (19) Coca-Cola and any Devor Author. (2017 Records and Testimony Subpoena, Attachment#3 at 3-6 (list numbers correspond to record request numbers).)

4

On May 18, 2017, the OAG sent a letter objecting that CrossFit's subpoena was vague, overly broad, and unduly burdensome, sought discovery of information that was not relevant to the litigation or likely to lead to information relevant to the case, and contemplated expensive search, retrieval, review, and production efforts that OSU lacked the manpower and financial resources to undertake, and which would impose unfair and inappropriate burdens on OSU. (Caryer Decl. ¶ 7; Letter from Caryer to Danzig (May 18, 2017), Caryer Decl. Ex. 2) Further, the subpoena sought student specific information that is protected from disclosure by FERPA and other information that may be highly confidential, privileged, and/or proprietary. *Id.* OSU informed CrossFit that it does not possess personnel and other resources sufficient to engage in the extensive information gathering expedition proposed by the subpoena, nor to deploy the FERPA notice effort that would be required to disclose the volume of student-specific information requested. *Id.*

The OAG and CrossFit's counsel met and conferred, agreeing that OSU would produce certain additional documents on a rolling basis. (Caryer Decl. ¶ 8.) On June 23, 2017, OSU produced documents. *Id.* at ¶ 9. CrossFit's counsel complained about the form in which they were produced and asked the OAG to re-produce them; OSU agreed. *Id.* at ¶ 10. The OAG and CrossFit's counsel continued to meet and confer in order to meet CrossFit's demands and limit the burden on OSU. *Id.* at ¶ 11. OSU provided two additional productions in August 2017, and a fourth production on September 19, 2017. *Id.* at ¶ 12. An additional collection of documents identified by OSU contained potentially privileged NSCA materials. *Id.* at ¶ 13. After briefing and *in camera* review, the Franklin County Court of Common Pleas granted NSCA's motion to quash because the documents sought by CrossFit were protected by attorney-client privilege and

work product doctrine. *Id*.; Decision and Entry, Franklin Cty. C.P., No. 17MS315 (Jul. 10, 2018) (attached as Ex. H to Kaplan Decl.).

### D. CrossFit's Fifth Subpoena to OSU—March 2018

In February 2018, CrossFit issued a fifth subpoena to OSU requesting further production of records by March 19, 2018 (the "March 2018 Records Subpoena" (attached as Ex. 4 to Caryer Decl.)). (Caryer Decl. ¶ 14.) This subpoena contained 22 requests for documents and communications regarding eleven individuals. (Attachment #3 to March 2018 Records Subpoena 3-5.) The OAG sent a letter to CrossFit's counsel objecting for reasons similar to those in OSU's May 2017 objection letter. (Caryer Decl. ¶ 15; Objection Letter (March 13, 2018), Caryer Decl. Ex. 5.) While preserving these objections, OSU produced additional documents on March 21, 2018. (Caryer Decl. ¶ 16.)

### E. The Operative Subpoenas: CrossFit's Sixth and Seventh Subpoenas to OSU—October and November 2018

In July 2018, CrossFit's counsel once again sought third-party discovery from OSU, alleging OSU had failed to preserve one email and attachment that CrossFit already received in an NSCA production. (Caryer Decl. ¶ 17; email from Nahama to Caryer (Jul. 10, 2018), Caryer Decl. Ex. 6) This email is a chain from July 2015 and was created *after* OSU finished responding to CrossFit's first two subpoenas and *before* CrossFit served its third subpoena on OSU. (Caryer Decl. ¶ 18 & Ex. 6.) Although this email chain could have been deleted while OSU was under no obligation to respond to any outstanding CrossFit subpoena, CrossFit's counsel insisted further and more intrusive discovery was required to determine why this email was not produced—even though CrossFit had the email in its possession. *Id*.

In particular, CrossFit demanded that its forensic investigator, Stroz, be permitted to conduct an investigation of OSU's computer systems and email servers. (Caryer Decl. ¶ 19,

email from Nahama to Caryer (Jul. 27, 2018), Caryer Decl. Ex. 7.) The OAG requested that CrossFit provide any court documents authorizing CrossFit to collect documents directly from OSU servers without OSU first reviewing documents for responsiveness or privilege. (Caryer Decl. ¶ 20; Caryer email to Nahama (Jul. 30, 2018), Caryer Decl. Ex. 8.) Because no such order exists, CrossFit instead pointed to an order authorizing collection of data from *NSCA's servers*, which CrossFit's counsel misrepresented as applying to OSU. (Caryer Decl. ¶ 21; Nahama email to Caryer (Jul. 30, 2018), Caryer Decl. Ex. 9; *see also* Sanctions Order 10:22-23 (attached as Exhibit 1 to November 2018 Records Subpoena) ("Plaintiff shall commission a neutral forensic analysis of *the NSCA's servers* . . . ." (emphasis added)).) Based on the Sanctions Order *against NSCA*, CrossFit demanded that *OSU* give Stroz "access [to] Dr. William Kraemer and Joan Kraemer's (1) OSU email accounts; (2) any related OSU repositories where the Kraemers may have kept responsive documents, and (3) their electronic devices (including cell phones), for purposes of completing its evaluation of the relevant issues." *Id.* CrossFit maintains that it is entitled to seize OSU documents and data outside the normal scope of third-party discovery because the Kraemers conducted NSCA business using their OSU email accounts. *Id.* CrossFit acknowledges, however, that OSU has an "interest in protecting any student-related or otherwise propriety information on these devices, email accounts and repositories that OSU believes cannot be meaningfully addressed under the protective order" in the Federal Case. *Id.*

In September 2018, after CrossFit refused OSU's offer to produce additional documents after reviewing the materials on the myriad servers and accounts targeted by CrossFit to insure they were responsive to CrossFit's subpoena and to remove FERPA protected and privileged/confidential material prior to seizure by Stroz, CrossFit's counsel threatened OSU with yet another subpoena and corporate deposition, all based upon the single July 2015 email

that it already possessed. (Caryer Decl. ¶ 22; Caryer email to Nahama (Sept. 13, 2018), Caryer Decl. Ex. 10.)

### 1. The Sixth Subpoena—for Testimony Under Rule 30(b)(6)

On October 2, 2018, CrossFit served OSU with its sixth subpoena, the October 2018 Testimony Subpoena. This subpoena demands another OSU corporate witness deposition covering 17 "discovery on discovery" topics related to OSU's document retention policies for a period of over ten years and its compliance with CrossFit's five prior subpoenas. (Exhibit A to October 2018 Testimony Subpoena.)

CrossFit and OSU proceeded in their discussions, turning to a proposal where OSU would run modified document searches with additional search term variations in exchange for a withdrawal of this subpoena. (Caryer Decl. ¶ 30; Nahama email to Caryer (Sept. 20, 2018), Caryer Decl. Ex. 16.) On October 8, 2018, one of CrossFit's attorneys thanked the OAG for its time devoted to this process and provided OSU a list of 39 "updated terms" to be run on 17 custodians for the date range January 1, 2008 to July 19, 2017. (Caryer Decl. ¶ 32; Harris email to Caryer (Oct. 8, 2018), Caryer Decl. Ex. 18.) This included a "search string" for OSU to paste into the Office 365 search tool when performing additional searches of OSU's servers. *Id.*

On October 20, 2018, CrossFit emailed the OAG a copy of the October 2018 Scheduling Order, noting that Stroz told the California federal court that it was communicating with "the Ohio Attorney General's Office to authorize" collections—which CrossFit's counsel asserted was a court order requiring OSU to provide Stroz direct access to OSU's computer systems. (Caryer Decl. ¶ 33; Nahama email to Caryer (Oct. 20, 2018) Caryer Decl. Ex. 19.) CrossFit threatened "immediate Court intervention if OSU does not cooperate," and demanded that OSU allow Stroz to image the Kraemers' cell phones (which contain OSU email data) without any

prior OSU review for relevance, FERPA compliance, or other privilege from disclosure. *Id*. The OAG maintained that direct access to OSU's computer systems would not be permitted because of FERPA protections and other reasons. (Caryer Decl. ¶ 34; Caryer email to Nahama (Oct. 24, 2018), Caryer Decl. Ex. 20.)

On the morning of November 1, 2018, the OAG informed CrossFit that the new search protocol returned 110,577 emails for 14 custodians. (Caryer Decl. ¶ 35; Caryer email to Nahama (Nov. 1, 2018), Caryer Decl. Ex. 21.) Given the document volume, the OAG would not be able to complete its review within the one-week timeframe it had earlier anticipated and would instead provide rolling productions. (Caryer Decl. ¶¶ 35-37; emails between Caryer and Nahama, Caryer Decl. Exs. 21-23.) Later that day, the OAG responded to CrossFit's relentless demands for direct access to OSU's computer systems by expressing desire "to cooperate and provide CrossFit with the records it seeks, but . . . wondering if there is any way to do so without allowing a third-party to image OSU repositories." (Caryer Decl. ¶ 38; Caryer email to Nahama (Nov. 1, 2018), Caryer Decl. Ex. 24.) CrossFit refused. (Caryer Decl. ¶ 39; Nahama email to Caryer (Nov. 1, 2018), Caryer Decl. Ex. 25 ("We will stand firm on this position."); Caryer Decl. ¶ 40; Deagle email to Caryer (Nov. 1, 2018), Caryer Decl. Ex. 26 ("The short answer to your question . . . is no. . . . If OSU will not agree, we will seek a Court order compelling disclosure to Stroz.").)

CrossFit's increasingly burdensome and ever-expanding demands grew to the point where OSU and the OAG determined the University needed to hire outside counsel. On November 6, 2018, the OAG informed CrossFit that "OSU is in the process of hiring outside counsel because I am unable to give this matter the attention it deserves." (Caryer Decl. ¶ 41; Caryer email to Nahama (Nov. 6, 2018), Caryer Decl. Ex. 27) On November 8, 2018, Tucker

9

Ellis LLP, took over the meet and confer efforts with CrossFit. (Kaplan Dec., ¶ 2.) During meet and confer negotiations by phone and email over the following weeks, CrossFit's counsel maintained CrossFit's position that nothing short of allowing Stroz direct access to image OSU computer systems and servers—including copying documents irrelevant to CrossFit's litigation against NSCA and documents containing FERPA-protected information—would satisfy CrossFit. (Kaplan Decl. ¶ 3; Kaplan-Nahama email chain (Nov. 10, 2018), Kaplan Decl. Ex. A at 1 ("If OSU decides to change gears and obstruct Stroz's access to Dr. Kraemer's NSCA records, we have no choice but to proceed with depositions and motions practice . . . .").) CrossFit's counsel also amplified its threats, issuing preservation demands to Tucker Ellis and the Ohio Attorney General's Office covering communications with their client, OSU, and making unsubstantiated allegations of malfeasance against them. (Kaplan Decl. ¶ 4; Nahama emails to Kaplan (Nov. 28-29, 2018), Kaplan Decl. Ex. B.) OSU and its counsel understand these statements to be implied threats that CrossFit would next be seeking discovery on discovery from the Ohio Attorney General's Office and Tucker Ellis in addition to OSU. (Kaplan Decl. ¶ 4.)

### 2. The Seventh Subpoena—Seeking Direct Access to OSU's Servers for Records

On November 15, 2018, CrossFit served its seventh subpoena on OSU (the November 2018 Records Subpoena). Although the OAG had previously explained to CrossFit and its counsel that FERPA prohibits such access, the subpoena demands that OSU provide Stroz direct access to copy OSU's computer servers with no prior document review for relevancy, FERPA compliance, or other privilege by OSU. Specifically, the subpoena demands that Stroz be permitted to image all OSU repositories, devices, and sources of ESI used by OSU Professor William Kraemer or his assistant, Joan Kraemer, to conduct NSCA business. (Exhibit A to November 2018 Records Subpoena.)

As part of the meet and confer process, Tucker Ellis sent CrossFit's counsel a Rule 45(d)(2)(B) letter on November 26, 2018, objecting to CrossFit's distortion of the record, unfair accusations of non-compliance, and failure to address (1) the undue burden and significant expense that a forensic analysis of OSU's computer systems would impose on OSU, and (2) FERPA's prohibition of OSU granting CrossFit and Stroz unfettered access to OSU data without advance notice to affected students and/or parents. (Kaplan Decl. ¶ 5; Objection Letter at 3 (Nov. 26, 2018), Kaplan Decl. Ex. C.).) The letter further objected that CrossFit had offered no viable solution on how CrossFit's subpoena could be executed in a FERPA-compliant manner and that CrossFit's only suggestion was for OSU to violate FERPA by allowing Stroz to seize records. *Id.* OSU closed its letter offering a compromise solution to provide a final, limited round of discovery that would end third-party discovery on OSU once and for all. *Id*. at 4-5.

CrossFit and OSU counsel met and conferred on this proposal on November 26 and 27. (Kaplan Decl. ¶ 6.) After not hearing back from CrossFit or Stroz for over a week, OSU reached out to CrossFit regarding the proposal and to confirm that the December 10, 2018, deposition date the parties reserved was continued due to the ongoing meet and confer. (Kaplan Decl. ¶ 7.) CrossFit's counsel responded, confirming that the deposition would not go forward and issuing a renewed set of threats regarding a motion to compel, accusations of malfeasance, and suggesting ever-expanding discovery on discovery against counsel and OSU. (Kaplan Decl. ¶ 8; Kaplan-Nahama email chain (Dec. 7, 2018), Kaplan Decl. Ex. E.) Stroz also indicated it was not capable of providing OSU necessary FERPA assurances and suggested it would be better if OSU retained a separate e-discovery vendor. (Kaplan Decl. ¶ 9; Aquilina email to Kaplan (Dec. 7, 2018), Kaplan Decl. Ex. F.)

In response to these ongoing threats and the growing expense to OSU caused by CrossFit's lengthy and abusive meet and confer process, OSU is compelled to move this Court for an Order quashing these subpoenas under Rule 45(D)(3) and a Protective Order under Rule 26(c) that forbids any further 30(b)(6) deposition of OSU.

## II.      LAW AND ARGUMENT

Rule 45 allows parties to a legal action to command a non-party to testify at a deposition and produce documents and electronically stored information, but parties are required by the Rule to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Upon a timely motion, a court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

### A. The November 2018 Records Subpoena must be quashed because complying with it would violate FERPA and impose an undue burden on OSU.

### 1.    Complying with CrossFit's subpoena would violate FERPA.

CrossFit has taken a hard line that OSU must turn over entire document repositories and allow imaging of its computer systems and servers, which would require disclosure of student records and information in violation of FERPA. Under FERPA, OSU may not release educational records or personally identifiable student information except in limited circumstances. 20 U.S.C. § 1232g(b). Universities can release this information when "[t]he disclosure is to comply with a judicial order or lawfully issued subpoena," 34 CFR § 99.31(A)(9)(i); however, the institution must first make "a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action," 34 CFR § 99.31(A)(9)(ii).

OSU must agree to comply with FERPA as a condition of accepting federal funding. (Declaration of Jack D. Miner ¶ 4 (attached as Exhibit F).) Approximately 29% of OSU's operating revenue for the 2017-2018 academic year came from federal funding, and this funding would be jeopardized if OSU fails to comply with FERPA. *Id.* OSU therefore takes its FERPA compliance obligations very seriously. *Id.* at ¶ 5.

FERPA prevents OSU from granting CrossFit access to the servers requested by CrossFit until OSU has first reviewed each of the documents on those servers for FERPA-protected information and given affected students written notice and an opportunity to file an objection or motion to quash. 34 C.F.R. § 99.31(a)(9)(ii). As issued, CrossFit's subpoena would require (and its counsel has demanded throughout meet and confer) that OSU data be turned over wholesale without prior OSU review and advance notice to students. This would require OSU to violate FERPA and jeopardize its federal funding. CrossFit's subpoena must be quashed under Fed. R. Civ. P. 45(d)(3)(A) because it requires disclosure of protected material and imposes an undue burden on OSU.

**2. Even if CrossFit would permit OSU to review all documents contained in the computer systems subject to the subpoena, the overly broad document requests and required FERPA review would impose undue burden on OSU.**

Because CrossFit refuses to limit its subpoena to documents relevant to its dispute with NSCA, it seeks documents that are not relevant to its lawsuit and not subject to discovery under Rule 26(b)(1). The demand for irrelevant documents contained on entire servers at OSU is unequivocally not proportional to the needs of CrossFit's case. The relevance and proportionality limitations built into Rule 26 are especially important here. Even assuming CrossFit would permit OSU to conduct an appropriate FERPA review and provide students the notice required by federal law, that process would be unduly burdensome on OSU and grossly disproportionate

to CrossFit's needs for its lawsuit against NSCA—all the more so because CrossFit insists on imposing these burdens to obtain irrelevant documents that are not subject to discovery.

Indeed, CrossFit has not been able to articulate why it needs access to OSU's servers to prepare its case for trial. (Kaplan Decl. ¶ 10) OSU's counsel asked CrossFit to identify what issues it needed additional discovery on for trial while meeting and conferring. *Id*. CrossFit's counsel could not identify any issue or fact; rather, he merely reiterated that access was necessary so the investigation authorized by the California federal court into NSCA's servers could be completed. *Id*. CrossFit has already received thousands of documents in response to five subpoenas and it is simply not proportional to the needs of its case to burden OSU further. Indeed, CrossFit already received *seventeen* evidentiary sanctions against NSCA, including adverse inference instructions to be given to the jury. *See* Sanctions Order 11:21-13:15 (attached as Exhibit 1 to November 2018 Records Subpoena). The further burden on OSU is simply not warranted, especially since CrossFit has not reasonably particularized its requests or tailored them to the issues. Nor has it taken its obligation to craft a subpoena to avoid undue burden into account in light of the FERPA prohibitions that it is well aware of.

For OSU to comply with a subpoena under FERPA, it first identifies all responsive records containing FERPA-protected information and then makes reasonable efforts to provide advance notice so that each affected student can take protective action before their records are released. (Miner Decl. ¶ 6.) OSU's FERPA notification process includes the following steps:

a.   OSU's Office of Legal Affairs ("OLA") reviews each responsive record to determine if it contains any FERPA-protected information. This often requires consultation with various OSU units and multiple people.

b.   If personally identifiable student information is found, the OLA consults with the Registrar's Office, which identifies the precise student identified in the record.

c.   The Registrar's Office provides the OLA with the student's contact information so that proper notice can be provided to the student.

14

*Id.* at ¶ 7. This process is often complicated by the fact that OSU's student database contains over 960,000 students. *Id.* at 3, n.1. Identifying which precise student's information is contained in a given record can be difficult if the student has a common name or the record contains only part of a student's name along with other personally identifiable information. *Id.* Even in these cases, OSU must make reasonable efforts to identify and notify the appropriate student. *Id.*

After FERPA notices are sent, roughly 20% of notice recipients contact OSU for more information. *Id.* ¶ 9. OSU handles these inquiries with great sensitivity to explain why student information is being disclosed, often having to clarify that a student's protected information has not been mishandled. *Id.* Students often have questions about the lawsuit, whether the student is being sued, whether the student must hire a lawyer, when their information is being released, and their privacy in general. *Id.* Responding to these questions is time consuming and diverts OSU resources away from the regular operation of the University's educational mission. *Id*. at ¶ 10.

Because CrossFit seeks disclosure of entire OSU computer systems and email accounts, the documents sought would likely contain a substantial number of FERPA-protected records. Under FERPA, a student's education records include any "records that are directly related to a student and maintained by an educational agency or institution." 20 U.S.C. 1232g(a)(4); 34 CFR § 99.3. As the Ohio Supreme Court held, "the plain language of the statute does not restrict the term 'education records' to 'academic performance, financial aid, or scholastic performance.' Education records need only 'contain information directly related to a student' and be 'maintained by an educational agency or institution' or a person acting for the institution." *State ex rel. ESPN v. Ohio State Univ.*, 132 Ohio St. 3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 30.

Any record maintained by OSU that contains personally identifiable information about a student is protected by FERPA. Personally identifiable information is defined broadly to include

15

the student's name, address, any personal identifier such as a social security number, and any "other information that, alone or in combination, is linked or linkable to a specific student and would allow a reasonable person in the school community who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty." 34 C.F.R. § 99.3; *see also* FERPA, 73 Fed. Reg. 74806, 74831 (Dec. 9, 2008) ("[I]nformation such as address, date and place of birth, race, ethnicity, gender, physical description, disability, activities and accomplishments, disciplinary actions, and so forth, can indirectly identify someone.").

For OSU to produce the troves of documents requested in CrossFit's subpoena in a FERPA-compliant manner, OSU would have to review each and every document that would be seized by CrossFit (before the seizure), identify records that contain personally identifiable student information, and identify and notify all affected students. (Miner Decl. ¶ 12.) This process would take considerable time, require intensive review by OSU staff, and also likely require significant consultation with the owner of the record (OSU department or school) to determine if personally identifiable information relates to a student, employee, staff member, or non-affiliated individual. *Id.* Given the potential volume of material in the data sources sought by the subpoena, it likely would be impossible for OSU staff to review each individual record and provide the required FERPA notices in any meaningful time frame. *Id.* at ¶ 13.

CrossFit's subpoena requires disclosure of protected matter, seeks documents that are not relevant or proportional to its case, and does not take reasonable steps to avoid imposing undue burden and expense on OSU. *See* Fed. R. Civ. P. 26(b)(1), 45(d)(3)(A)(iii)-(iv). This Court must quash CrossFit's November 2018 Records Subpoena to enforce OSU's FERPA-compliance

obligations, protect the educational privacy rights of OSU students and parents, and avoid undue burden and expense on OSU.

**B.   The November 2018 Records Subpoena must be quashed because CrossFit's demand for "Repositories and Devices" imposes undue burden and expense.**

OSU has already responded to five CrossFit subpoenas since 2014 in the California Federal and State Cases. CrossFit now commands OSU to turn over for forensic imaging "all Repositories and Devices" in OSU's possession, custody, and control "to identify any issues Related To preservation or spoliation, consistent with" a sanctions order issued in the Federal Case against *NSCA* (*not OSU*). (*See* November 2018 Records Subpoena, Ex. A at 3.) CrossFit further commands OSU to turn over all "repositories,"[4] devices, and ESI sources used by an OSU professor and his assistant. *Id.* at 3-4.

CrossFit's request is neither tailored to relevant evidence nor proportional to the needs of its case. Fed. R. Civ. P. 26(b)(1). The subpoena seeks wholesale turnover of any OSU network drive, device, or server that ever contained or transmitted a single document or communication related to NSCA—even if wholly unrelated to the California Federal case and the soon-to-be-dismissed State case. CrossFit has made no attempt to exclude capturing irrelevant documents, knowing full well that the scope of its requests would capture irrelevant documents from the Kraemers and other OSU faculty, staff, and students—individuals who have no conceivable connection to CrossFit's litigation.

---

[4] As an example of the excessive breadth of the November 2018 Records Subpoena, CrossFit defines "repository" to include "all data sources and repositories of any ESI and hard-copy documents, including OSU servers, server backups, cloud-based storage, hard-copy repositories by location, laptops, mobile phones, external media . . . , cloud storage (personal email, social media, etc.), databases, and any other physical or virtual ESI storage location which is accessible to Dr. William Kraemer or Joan Kraemer." This definition is both vague (it contains the term "repository" in its definition of "repository") and unduly broad. By this definition, OSU must turn over for imaging any electronic or hard copy storage location, drive, device, or facility for all of OSU if either of the Kraemers once used it in any way remotely related to NSCA.

17

CrossFit is attempting to treat OSU as nothing more than an extension of NSCA and apply the Sanctions Order against NSCA to OSU. Whatever sanctions were ordered against *NSCA*, CrossFit cannot use that Order as a club against a *non-party*. This Court should quash the November 2018 Records Subpoena to protect OSU from the undue burden posed by CrossFit's excessive and harassing document demands. Fed. R. Civ. P. 26(b)(1), 45(d)(1) & (3)(A)(iv).

### C. CrossFit's subpoena for a second 30(b)(6) deposition without leave of court must be quashed, and OSU is entitled to a protective order.

CrossFit previously sought, and OSU previously produced for deposition, a corporate designee witness under Rule 30(b)(6). Because CrossFit does not have leave of court for a second Rule 30(b)(6) deposition of OSU, the October 2018 Testimony Subpoena violates Rule 30(a)(2)(A)(ii). *See* Moore's Federal Practice, § 30.05[1][c] at 30-30.3 (3d ed. 2005) ("The rule requiring leave of court to take a second deposition applies to an entity that is deposed pursuant to Rule 30(b)(6). Even though a party may be deposing a different corporate representative, it is still seeking a 'second' deposition of the entity."); *see also Duran v. Sara Lee Corp.*, No. 1:11-CV-313, 2013 WL 12308200, *2 (W.D. Mich. May 3, 2013) (explaining that because a court must "affirmatively allow discovery beyond specified limits," successive 30(b)(6) depositions are not permitted without leave of court.) This Court recently held the law was "clear" that leave of court is required when "the person to be examined already has been deposed in the case," including for a 30(b)(6) deposition. *DRFP, LLC v. Republica Bolivariana de Venezuela*, No. 2:04-cv-793, 2015 WL 5244440, *1-2 (S.D. Ohio Sept. 9, 2015) (quoting *Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.*, 2007 WL 764302 (S.D. Ohio Mar. 9, 2007)). Leave is not permitted if the second deposition would be unnecessarily cumulative, the requesting party has had other opportunities to obtain the same information, or the burden of a second deposition outweighs the potential benefit. *Id.*

Here, CrossFit seeks a second deposition of a non-party to advance a "discovery on discovery" battle with NSCA. There is no basis for discovery on discovery from OSU. "When discovery sought is collateral to the relevant issues (*i.e.*, discovery on discovery), the party seeking the discovery must provide an adequate factual basis to justify the discovery and the Court must closely scrutinize the request in light of the danger of extending the already costly and time-consuming discovery process ad infinitum." *Winfield v. City of New York*, No. 15-cv-05236, 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018) (quotation marks in original omitted).

CrossFit rationalizes its successive deposition demand with a single email that already was produced by NSCA and not included in OSU's production in response to a subpoena issued three months after the email was received (during which time the email permissibly could have been deleted). (*See* October 2018 Testimony Subpoena, Ex. A at 6:27-7:5; Caryer Decl. ¶¶ 17-22.) Importantly, OSU was not under any duty to preserve the email in question when it was received. *See Swetlic Chiropractic & Rehabilitation Center, Inc., v. Foot Levelers, Inc.*, (S.D. Ohio Apr. 27, 2016) 2016 WL 1657922 at *3 ("In contrast with the parties to the litigation, non-party WestFax does not have a duty to preserve information absent a court order."). And CrossFit already received the email from NSCA. *See generally Callidus Capital Corp. v. FCA Group*, No. 14-10484, 2018 WL 1556231, *1 (E.D. Mich. Mar. 30, 2018) (noting that under Rule 26(b)(2)(C) discovery "is not permitted when 'it is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive'" (alteration marks in original omitted)). Further, CrossFit's bid for discovery on discovery against OSU, based on a single email chain, is "neither relevant to a claim or defense in the litigation nor proportional to the needs of the case" *See Commins v. NES Rentals Holdings, Inc.*, No. 3:16CV-00608, 2018 WL 3186983, *9 (W.D. Ky. June 28, 2018); *Martin v. Allstate*

*Ins. Co.*, 292 F.R.D. 361, 364 (N.D. Tex. Apr. 4, 2013) (denying Rule 30(b)(6) deposition where topics sought discovery on discovery, including document retention polices, efforts in responding to discovery, and efforts to preserve documents, because such topics were "overbroad and irrelevant."). Deposition testimony about what OSU did to comply with discovery in this action is simply not relevant to the claims CrossFit has against NSCA—claims for which it already has been awarded adverse inference instructions due to NSCA's discovery failures.

### III.    CONCLUSION

CrossFit's attempt at a second 30(b)(6) deposition is only one component of an abusive and harassing fishing expedition in CrossFit's litigation against NSCA that would impose significant burden and expense on nonparty OSU. Not satisfied with its expansive and burdensome requests, CrossFit's counsel has also threatened OSU, the Ohio Attorney General's Office, and Tucker Ellis with motions to compel, accusations of malfeasance, and baseless preservation demands.

Only court intervention can put an end to CrossFit's hyper-aggressive discovery. CrossFit's sixth and seventh subpoenas to nonparty OSU are improper and overly broad and would impose undue burden and expense, require OSU to violate FERPA, and violate the educational privacy rights of OSU students and parents. OSU seeks protection from this Court and respectfully requests an order quashing CrossFit's October 2018 Testimony and November 2018 Records Subpoenas and a protective order forbidding further 30(b)(6) depositions of OSU.

012434\000012\4009905.7

Dated: December 14, 2018          Respectfully submitted,


*/s/Scott J. Stitt*
Scott J. Stitt (0073943)
TUCKER ELLIS LLP
175 S. Third St., Suite 520
Columbus, OH 43215
Tel:  614.358.9304
Fax:  614.358.9712
E-mail:  scott.stitt@tuckerellis.com

*Trial Attorney for Non-Party*
*The Ohio State University*


Jeffrey C. Sindelar Jr. (0084252)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Tel:  216.592.5000
Fax:  216.592.5009
E-mail:  jeffrey.sindelar@tuckerellis.com

*Attorneys for Non-Party*
*The Ohio State University*

012434\000012\4009905.7

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2018, a copy of the foregoing was filed with the Court electronically and was served on the following counsel by first-class mail pursuant to Fed. R. Civ. P. 5(b)(2)(C):

Justin S. Nahama
Stephanie Lee Cobau
Wynter L. Deagle
Matthew Hrutkay
Troutman Sanders LLP
11682 El Camino Real, Suite 400
San Diego, CA 92130

Alison Ann Grounds
Troutman Sanders
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308-2216

David F. Kowalski
Latham and Watkins
12670 High Bluff Drive
San Diego, CA 92130

William O. Reckler
Paul A. Serritella
Latham and Watkins LLP
885 Third Avenue
New York, NY 10022

Daniel Scott Schecter
Latham and Watkins LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560

*Attorneys for Plaintiff CrossFit, Inc.*

Micaela P.S. Banach
Ethan Thomas Boyer
James R Lance
Genevieve Marie Ruch
Steven Warde Sanchez
Noonan Lance Boyer & Banach, LLP
701 Island Avenue, Suite 400
San Diego, CA 92101

*Attorneys for Defendant National Strength and Conditioning Association*

/s/Scott J. Stitt
*One of the Attorneys for Non-Party*
*The Ohio State University*

22